IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CAMERON BELK,<br>    *Plaintiff,*<br><br>    v.<br><br>IDOC, et al.,<br>    *Defendants*. | Case Number:  3:13-cv-00841-JPG-PMF |

## REPORT AND RECOMMENDATIONS

**FRAZIER, Magistrate Judge:**

  Plaintiff Cameron Belk is a former inmate with the Illinois Department of Corrections ("IDOC"). Following his release from prison, Belk was required under Illinois law to serve a period of mandatory supervised release ("MSR"). Belk asserts in this lawsuit that the defendants improperly calculated his MSR term and required him to serve a four year MSR period when he should have only served two years. Belk initially filed this suit *pro se* but he has since obtained counsel. The defendants now move for summary judgment. (Doc. 48). Belk filed a response in opposition. (Doc. 56). For the following reasons, it is RECOMMENDED that the defendants' motion for summary judgment be GRANTED as to defendants Godinez, Monreal and Ley, and DENIED as to defendants Bell, Jackson and Stephenson.

### I.  BACKGROUND

  In October 2006 Champaign County prosecutors charged Belk with two counts of aggravated criminal sexual abuse, 720 ILCS 5/12-16(d). See *People v. Belk*, 2011 IL App (4th) 100072-U, 2011 WL 10481547 (unpublished opinion). According to the record in his criminal

case, Belk owned a clothing store and he was criminally charged because he was having sex with one of his 16 year old female employees. *Id.* Belk represented himself at trial and the jury found him guilty on both counts. *Id.*

On October 14, 2008 the Champaign County Circuit Court sentenced Belk to 42 months in prison on both counts, to be served concurrently. (Doc. 49-7, p. 1). On October 23, 2009 the Circuit Court modified the sentence from 42 months to 36 months, to be served concurrently as well. (Doc. 49-8, p. 1). However on both sentencing forms, the Circuit Court left the MSR period blank.[1]

Belk left IDOC custody and began his MSR term on March 25, 2010. (Belk deposition, Doc. 49-1, p. 13). Belk testified at his deposition that his MSR term was initially supposed to begin in January of 2010, but his release was delayed because the IDOC would not approve of his residence locations. *Id.* Belk served the four years of supervised release and the supervised release period ended on October 29, 2013 (Belk received day for day good time credit for the January through March 2010 period, and so the MSR period served was not a full 4 calendar years). *Id* at p. 31. While Belk was on supervised release he was placed on electronic monitoring, his movement was restricted, and his home was subject to random inspection by parole officers. *Id.* at p. 31.

At some point in time either prior to his release or shortly thereafter, Belk began to suspect that his MSR term was improperly calculated. The MSR confusion stems in large part

---

[1] Although the original and amended sentencing forms do not articulate a specific MSR period, the subject of supervised release was briefly discussed between Belk and the Champaign County Circuit Court judge prior to Belk's criminal trial. Belk had notified the judge that he did not want to be represented by the public defender's office and Belk requested additional time to find a defense attorney on his own. Three months passed and Belk was unable to find an attorney. The Circuit Court judge decided to move forward with the case, with Belk defending himself *pro se*. At a July 21, 2008 pretrial hearing, the Circuit Court judge told Belk:

> [A]s I've indicated, these are both Count II felonies. That means you can be sent to probation for up to 48 months. You can be sent to prison for not less than three, nor more than seven years. That'd be followed by a period of mandatory supervised release of two years. Maximum fine could be up to 25 thousand dollars.

(Doc. 2-2, p. 5).

from the wording of the relevant statute, which states that a person convicted of aggravated criminal sexual abuse (which the plaintiff was), will be subject to a 4 year term of supervised release "if the victim is under 18 years of age [and it is a] second or subsequent offense[.]" 730 ILCS 5/5-8-1(d)(5).[2] If the aggravated sexual abuse conviction is not a "second or subsequent offense" the person convicted is subject to a two year MSR term. When a Circuit Court does not designate a specific MSR term, the IDOC applies the relevant statute and calculates the MSR period itself. (Doc. 49-4, p. 1). Because Belk was convicted on two counts of aggravated criminal sexual abuse, the IDOC determined that Belk fell under the "second or subsequent offense" provision set forth at 730 ILCS 5/5-8-1(d)(5) and calculated that he was to receive a 4 year MSR term.

In a fortuitous bit of timing, on June 22, 2010 the Illinois Appellate Court for the Third District issued an opinion in *People v. Anderson*, 402 Ill. App. 3d 186, 931 N.E.2d 773 (2010) directly addressing the 730 ILCS 5/5-8-1(d)(5) "second or subsequent offense" MSR enhancement provision. In *Anderson* the defendant pleaded guilty to two counts of aggravated criminal sexual abuse after he, a 24 year old male, engaged in oral sex with a female less than 16 years of age. *Id.* at 187, 931 N.E.2d at 774. The defendant did not have any prior aggravated criminal sexual abuse or felony criminal sexual abuse convictions. *Id*. At sentencing, there was a disagreement between the prosecution and the defense as to whether the defendant should be subject to 2 years of MSR or 4 years under the "second or subsequent offense" enhancement. *Id.* at 188, 931 N.E.2d at 775. The trial judge agreed with the prosecution and sentenced the defendant to a 4 year MSR term. *Id.* at 189, 931 N.E.2d at 775.

---

[2] The full provision states:
    (5) if the victim is under 18 years of age, for a second or subsequent offense of aggravated criminal sexual abuse or felony criminal sexual abuse, 4 years, at least the first 2 years of which the defendant shall serve in an electronic home detention program under Article 8A of Chapter V of this Code[.]
730 ILCS 5/5-8-1(d)(5).

The defendant appealed and the appellate court reversed, holding that the defendant should have only been sentenced to two years of MSR. *Id.* at 193, 931 N.E.2d at 778. The Court held that a defendant must be *convicted* of a prior offense before the "second or subsequent offense" will apply, and that the provision will not apply to a defendant convicted of two or more offenses at the same time (e.g., Belk). *Id.* The Court noted that the defendant's challenge to the wording of the MSR statute was a matter of first impression, but Illinois Appellate Courts had similarly construed other like sentence enhancement provisions. *Id.* See *People v. Carlock*, 102 Ill. App. 3d 1100, 1102, 430 N.E.2d 212, 214 (1981) (ambiguous penal statute should be construed in favor of the accused); *People v. Phillips*, 56 Ill. App. 3d 689, 695, 371 N.E.2d 1214, 1219 (1978) (sentence enhancement provision that applied when defendant was "convicted of a second or subsequent offense" required earlier conviction).

After his release from prison, Belk unsuccessfully attempted to have his MSR term reduced from 4 years to 2 years. Belk contacted Shelia Bell, the Records Office Supervisor at Western Illinois Correctional Center, Belk's former prison. (Doc. 2-2, p. 9). Bell responded by letter stating that she had conferred with Glenn Jackson, the IDOC Chief Records Officer regarding his MSR issue but that the IDOC would not reduce his MSR term absent a court order or "other legal modifications." *Id.* Bell also noted that Jackson had contacted the Champaign County State's Attorney's office for clarification on the MSR issue, but they had not responded. *Id.* Additionally, Belk testified at his deposition that he personally contacted Jackson. (Doc. 49-1, p. 17). Jackson told him that he would be required serve the full MSR term unless a judge said otherwise. *Id.*

Belk also sought help from his parole officer, Karla Foote, and her supervisor Robert Ley. In late 2010 or early 2011, Foote contacted Mark Stephenson regarding Belk's MSR term.

(Doc. 2-2, p. 27). Mark Stephenson worked alongside Shelia Bell at the Western Illinois Correctional Center's Records Office. *Id*. Stephenson told Foote in an email that he had spoken to the IDOC Chief Records Officer regarding Belk's MSR term, but that it will remain at 4 years until the State's Attorney's Office provides some guidance on the issue. *Id*. Foote also spoke to Ley on Belk's behalf, but Ley told her that he was not going to do anything to change the MSR period. (Doc. 49-1, p. 20-21). Belk would later contact the IDOC legal department in Springfield, and the legal department told him that the parole supervisor must initiate the procedure to change his MSR term. (Doc. 49-1, p. 22).

Belk continued his efforts to reduce his MSR term by sending letters to IDOC Director Salvador Godinez and IDOC Prisoner Review Board ("PRB") chairman Adam Monreal. Belk testified at his deposition that he sent several letters to Godinez requesting assistance with the MSR issue, but Godinez never responded. (Doc. 49-1, p. 19-20). The record is unclear as to the extent of Monreal and Belk's communications with one another, but an affidavit signed by Monreal is attached to the defendants' motion for summary judgment. (Doc. 49-2, p. 1). Monreal states in his affidavit that the PRB is responsible for setting the conditions of parole and revoking parole, but it does not calculate an inmate's MSR term. *Id.*

On August 6, 2013 Belk filed a motion to amend his sentencing order in the Champaign County Circuit Court. (Doc. 2-2, p. 10). However the Court declined to rule on the motion because the Court held that it lacked jurisdiction over the matter. (Doc. 2-2, p. 23).

Affidavits signed by Jackson and Stevenson, and a declaration signed by Bell, are attached to the defendants' motion for summary judgment. Jackson states in his affidavit that he is the Chief Records Officer for the IDOC and that "the Records Office is responsible for completing sentence calculations based on sentencing orders from the trial courts." (Doc. 49-4,

p. 1). Jackson notes that the "IDOC does not have the authority to alter an inmate's sentence or [MSR] term" but "occasionally trial courts will leave the MSR section blank on the sentencing order, thus, IDOC is required to apply the statutory provisions." *Id.* Jackson states in the affidavit that the IDOC contacted the Champaign County State's Attorney's Office to clarify Belk's MSR term, but the IDOC never received a response. (Doc. 49-4, p. 3). As such, the IDOC kept Belk's MSR term at 4 years. (Doc. 49-4, p. 4). Stevenson's affidavit and Bell's declaration essentially mirror Jackson's affidavit. (Stevenson's affidavit at Doc. 49-6 and Bell's declaration at Doc. 49-5).

Belk filed this lawsuit *pro se* on August 15, 2013. (Doc. 2). His supervised release period ended on October 29, 2013. (Doc. 49-1, p. 13). Plaintiff later retained counsel and on July 16, 2015 plaintiff's counsel entered his appearance. (Doc. 53). The defendants now move for summary judgment. (Doc. 48).

## II.   ANALYSIS

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When presented with a motion for summary judgment "all evidence must be construed in the light most favorable to the party opposing summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 261 (1986). The summary judgment phase of litigation has been described as the "'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003).

Belk asserts that his constitutional rights were violated when he was subjected to a 4 year MSR term instead of a 2 year term, as set forth in *People v. Anderson*, 402 Ill. App. 3d 186, 931 N.E.2d 773 (2010). It's undisputed that "incarcerating a prisoner beyond the termination of his sentence without penological justification" is unconstitutional, and Courts seem to agree that such acts violate the Eighth Amendment, specifically. *Campbell v. Peters*, 256 F.3d 695, 700 (7th Cir. 2001). However these kinds of claims are relatively rare, and as such, the body of controlling case law is not well developed. If a prisoner choses to attack the duration of their sentence in some manner, they will generally file a criminal appeal or habeas corpus action, as a § 1983 actions for money damages that "would necessarily imply the invalidity of his conviction or sentence" is barred pursuant to the Supreme Court's holding in *Heck v. Humphrey*, 512 U.S. 477, 487 (1994). However, "if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed[.]" *Id.* Here, Belk is not arguing that his sentence was invalid, but that the defendants miscalculated his MSR term and failed to correct it despite his repeated protests. As such, his claims are not barred by *Heck*.

Furthermore, like other Eighth Amendment actions for money damages, the plaintiff must establish that the defendants were deliberately indifferent to the constitutional violation. "Deliberate indifference requires more than negligence, rather the defendant must meet essentially a criminal recklessness standard, that is, ignoring a known risk." *Armato v. Grounds*, 766 F.3d 713, 721 (7th Cir. 2014) (internal quote omitted). However, "[i]n making determinations about a prisoner's release, prison officials are permitted to rely upon 'a reasonable interpretation of a state statute,' even if they are ultimately mistaken." *Id.* (quoting *Campbell v. Peters*, 256 F.3d 695, 701 (7th Cir. 2001)).

The Seventh Circuit has not specifically articulated the elements of a deliberate indifference claim under these circumstances. *Burke v. Johnston*, 452 F.3d 665, 669 (7th Cir. 2006). But, in dicta, the Seventh Circuit seems to approve the approach adopted by the Third Circuit, where a prisoner states an overextended incarceration § 1983 claim by establishing:

> [1] that a prison official knew of the prisoner's problem and thus of the risk that unwarranted punishment was being inflicted; [2] that the official either failed to act or took only ineffectual action under the circumstances; and [3] that there was a causal connection between the official's response to the problem and the unjustified detention.

*Id.* (citing *Moore v. Tartler*, 986 F.2d 682, 686 (3d Cir. 1993)).

Additionally, § 1983 individual liability hinges on the defendant's personal involvement in the constitutional deprivation, but it is not always clear which individuals have the authority and/or responsibility to correct the situation, particularly when the defendants are part of a large institutional bureaucracy. As the above mentioned Third Circuit opinion correctly notes; "not every official who is aware of a problem exhibits deliberate indifference by failing to resolve it." *Moore v. Tartler*, 986 F.2d 682, 686 (3d Cir. 1993). The Seventh Circuit acknowledges that there is a division of labor in correctional institutions, and that "[i]nmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on." *Greeno v. Daley*, 414 F.3d 645, 656 (7th Cir. 2005) (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004)). For instance, if a prisoner asserts that his constitutional rights were violated as a result of improper medical treatment from prison healthcare staff, non-medical prison employees are not required to second guess the decisions of healthcare professionals (unless the prisoner is receiving no treatment at all, or it is obvious to a layman that treatment is improper). See *Greeno*, 414 F.3d at 656.

In this case, the defendants' motion for summary judgment presents four arguments; (1) that defendants Ley, Godinez, and Monreal lack the requisite personal involvement in the alleged Constitutional violation, (2) that the defendants were not deliberately indifferent to Belk's MSR term, (3) the defendants are entitled to qualified immunity and (4) to the extent Belk alleges a Fourteenth Amendment due process claim, plaintiff had adequate post-deprivation remedies. Each argument will be addressed in turn.

The defendants first argue that Parole Supervisor Ley, (former) IDOC Director Godinez and (former) PRB Chairman Monreal lack the requisite personal involvement. The Court agrees with the defendants. None of these three defendants were involved in calculating Belk's MSR term, nor is there any evidence that these defendants were tasked with calculating or changing inmate MSR termination dates. Although it does not appear that Ley contacted the IDOC regarding the MSR issue, Ley's subordinate, Karla Foote, did notify IDOC records office employees about Belk's MSR problem. Because there is no evidence that Ley had the authority to change the MSR term, and Ley's office brought the issue to the attention of the appropriate IDOC employees, he cannot be subject to § 1983 liability. Additionally, it is not clear from the record whether Godinez or Monreal were even aware of Belk's MSR issue. In general, high ranking prison officials will not be subject to § 1983 liability under such circumstances. See *Vance v. Peters*, 97 F.3d 987, 994 (7th Cir. 1996). Therefore, defendants Ley, Godinez and Monreal are entitled to summary judgment because they were not personally involved in the alleged constitutional violations. As such, only the remaining three defendants will be discussed in regards to the other arguments included in the motion for summary judgment.

The defendants next argue that they were not deliberately indifferent to Belk's MSR term. However this argument is negated by the affidavits of Jackson and Stevenson, and the

declaration of Bell. The affidavits and declaration each state that when a sentencing court leaves the MSR period blank, the IDOC will set an MSR period itself for the prisoner by applying the relevant statutory period. The affidavits and declaration also state that the IDOC was aware of the *Anderson* decision, and the IDOC reviewed its inmate records for prisoners who may have had their MSR terms reduced as a result of the decision. When the Champaign County State's Attorney's Office failed to respond to the IDOC's inquiries regarding Belk's proper MSR term, the IDOC abandoned its efforts to correct Belk's MSR calculation. Additionally, Belk repeatedly contacted Jackson, Bell and Stevenson and requested that his MSR period be corrected. Under these circumstances, with the facts viewed in a light most favorable to Belk, it's fair to say that defendants Jackson, Bell and Stevenson ignored Belk's MSR issue or only took ineffectual action.

The defendants next argue that they are entitled to qualified immunity. "The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, 136 S. Ct. 305, 308, 193 L. Ed. 2d 255 (2015) (internal quote omitted). "Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)). The Supreme Court has established a two part test to determine whether a defendant is entitled to qualified immunity. The first question is; "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001). The second question is; was the law clearly established when the defendant's alleged unlawful conduct occurred? *Id*. The Supreme Court held in *Saucier* that Courts should address

the first question before proceeding to the second, but the Supreme Court later held in *Pearson v. Callahan* that the questions may be approached in either order. *Pearson v. Callahan*, 555 U.S. 223, 232, 129 S. Ct. 808, 816, 172 L. Ed. 2d 565 (2009).

Here, when the facts are viewed in a light most favorable to Belk, the defendants violated Belk's constitutional rights, and the law was clearly established when the unlawful acts occurred. In *Campbell v. Peters*, 256 F.3d 695, 700 (7th Cir. 2001) the Seventh Circuit held that the plaintiff, a former prisoner, articulated a constitutional right for the purposes of qualified immunity when he asserted that "correctional officials kept him imprisoned too long." Although supervised release is not the same as imprisonment, parole is a form of custody. *Hankins v. Lowe*, 786 F.3d 603, 605 (7th Cir. 2015) (citing *Jones v. Cunningham*, 371 U.S. 236, 241–43, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963)). Moreover, it is quite clear that the Court's holding in *People v. Anderson*, 402 Ill. App. 3d 186, 931 N.E.2d 773 (2010) addressing the 730 ILCS 5/5-8-1(d)(5) "second or subsequent offense" MSR enhancement provision applies to Belk's sentence. After the appellate court opinion was issued in *Anderson* (and in the absence of Illinois Supreme Court review), that Court's interpretation of 730 ILCS 5/5-8-1(d)(5) became the law in Illinois. See *Delgado v. Bd. of Election Comm'rs of City of Chicago*, 224 Ill. 2d 481, 488, 865 N.E.2d 183, 188 (2007) (Illinois appellate court opinions are binding regardless of issuing district court). Any qualified immunity defense therefore fails.

The last issue is the defendants' argument concerning a possible due process claim. Judge Gilbert's referral order (Doc. 8) does not mention any due process claims, and so it does not appear that Belk is proceeding on such a claim. However, the Court agrees with the defendants that any due process claim would fail because Belk had other adequate post deprivation remedies, i.e., a habeas corpus action or a petition for a writ of mandamus.

## RECOMMENDATIONS

It is RECOMMENDED that the defendants' motion for summary judgment be GRANTED as to defendants Godinez, Monreal and Ley, and DENIED as to defendants Bell, Jackson and Stephenson.

SO RECOMMENDED.

Dated: May 16, 2016

*s/ Philip M. Frazier*
**PHILIP M. FRAZIER**
**UNITED STATES MAGISTRATE JUDGE**
